UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Decker, Russell and Senior Judge Felton
Argued at Norfolk, Virginia


JOSHUA CHARLES MOSELEY

                                                  MEMORANDUM OPINION* BY
v.        Record No. 0881-15-1                    JUDGE MARLA GRAFF DECKER
                                                  JUNE 7, 2016

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              William H. Shaw, III, Judge Designate

              Kimberly Karle, Deputy Public Defender, for appellant.

              Christopher P. Schandevel, Assistant Attorney General (Mark R.
              Herring, Attorney General, on brief), for appellee.


        Joshua Charles Moseley appeals his convictions for two counts each of breaking and

entering in violation of Code § 18.2-91 and grand larceny in violation of Code § 18.2-95.  On

appeal, he contends that the evidence was insufficient to prove that he was the person who

committed the crimes.  Based on our review of the record, viewed under the applicable standard, we

agree with the appellant.  Accordingly, we reverse the convictions.

                                    I.  BACKGROUND[1]

        On June 3, 2013, Mary Ann and John Winsley resided at 5 Wilderness Road in Hampton,

located at the intersection of Wilderness Road and El Paso Court.  Mrs. Winsley, the last person

to leave the residence that day, locked the doors to her home and left at about noon.  When

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] On appeal of the sufficiency of the evidence to support a criminal conviction, the Court
views the evidence and all reasonable inferences flowing from the evidence in the light most
favorable to the Commonwealth.  See, e.g., Commonwealth v. Hudson, 265 Va. 505, 514, 578
S.E.2d 781, 786 (2003).

Mr. Winsley returned home shortly after 5:00 p.m., he noticed that the frame of the side door to the garage was broken. Various articles of jewelry and collectible currency in bill and coin form were missing from the home.

Captain Susan Canny of the City of Hampton Police Division lived just around the corner from the Winsleys on El Paso Court, a short cul-de-sac. On the day of the burglary at the Winsley residence, Canny came home from work around 3:00 p.m. As she drove down the Winsleys' street, she "cut the corner" from Wilderness onto El Paso. As she did so, a vehicle coming toward Wilderness stopped for her because she was in its lane of travel and she almost hit it. When asked to explain "how far [the other car] was" from 5 Wilderness Road, she said the vehicle "was against 5 Wilderness Road" on El Paso and "looked like he was pulling off the curb there coming onto El Paso to come on out to Wilderness." Canny testified that she had a clear view of the driver and took special notice of him because the cul-de-sac was small and "[e]verybody kn[ew] everybody," including the residents on the corner of Wilderness and El Paso. Canny later identified the driver of the vehicle as the appellant after seeing him again two weeks later. Canny gave no description of the vehicle he was driving.

On June 17, the appellant was found walking in the vicinity of an attempted burglary in Canny's neighborhood. Officer Eric Rausch responded to a call concerning an attempted burglary at 314 Beauregard Heights. He had received a description of the person who was seen in the area. The officer located the appellant, who matched this description, on East Little Back River Road in the area of Beauregard Heights. Although it was not a cold day, the appellant had a pair of "heavier knit glove[s]" in his pocket. Officer Rausch testified that the gloves looked like those used by grocery store workers to handle frozen foods. The appellant told the officer that the gloves were his "workout gloves." Officer Rausch indicated that the appellant's clothing

was "consistent with workout attire" because he was wearing athletic shoes, shorts, and a "workout shirt." The officer arrested the appellant sometime prior to 4:45 p.m. that day.[2]

Additional evidence established that a completed burglary occurred in the same neighborhood that day. That burglary was committed at 83 Fort Worth Street, where Sarah Ellis lived with her parents. Ellis left the house after her parents, around 10:00 a.m. When she left, all the doors and windows were secured except the patio door, which Ellis forgot to lock. When Sarah's father, Jonathan Ellis, came home around 3:30 p.m., the patio door was unlocked and the garage was open. He saw that his wife's and daughter's jewelry boxes had been emptied.

At 10:30 p.m. on June 17, the day of the burglary at 83 Fort Worth and the attempted burglary at 314 Beauregard Heights, tow truck driver Robin Shuffler received a call to tow a white "Crown Victoria" from the Willow Oaks Apartments, which were located "by Gosnolds Hope Park right across from Little Back River Road."[3] When Shuffler arrived, the windows of the vehicle were down and the keys were inside. After Shuffler towed the vehicle back to his company's lot, he saw money in the center console. Following company policy, he began to inventory the vehicle. In the course of that process, he found a bag of jewelry and some marijuana. At that point, he notified his supervisor, who called the police.

Detective Corporal Erik Rummel executed a search warrant for the white Crown Victoria. In the vehicle's glove box was an electric bill dated March 28, 2013, and bearing the appellant's first and last names. Rummel also searched the center console, which he described as

---

[2] The appellant's counsel represented that the charges against him for the attempted burglary were dismissed.

[3] The appellant had been arrested earlier in the day on *East* Little Back River Road in the area of Beauregard Heights. No evidence in the record indicates how close the scene of the appellant's arrest on East Little Back River Road in Beauregard Heights was to the portion of Little Back River Road that was "across from" the apartment complex where the car was found.

"jumbled and messy" with the items "mingled together."[4]  Inside the console he found a jewelry box that contained a small bag of suspected marijuana.  Underneath the jewelry box was a bag that contained jewelry.  Also in the console beneath the jewelry box were a Virginia state identification card and a library card, each of which bore the appellant's name.[5]  Another personal item in the console was a cellular telephone, which was not linked by the evidence to any particular individual.  Additionally, the console contained rare coins and paper currency.  At trial, the Winsleys and the Ellises identified photographs of the items found in the vehicle as depicting items that had been stolen from their homes in the two burglaries.

Detective Rummel later determined that the registered owner of the white Crown Victoria was Kelton Adams-Elkins.  Although no evidence indicated a relationship between the registered owner and the appellant, additional evidence established that the appellant routinely drove the vehicle.  Melissa Cooke testified that she was familiar with the car operated by the appellant through her duties as a property manager for Hampton Creek Apartments.  She identified a photo of the Crown Victoria and testified that she had seen the appellant driving it "[p]retty much on a daily basis" for the "several month[s]" during which he had resided at the apartment complex.  Cooke could not remember exactly when the appellant had lived there.  However, she testified that the address on the electric bill found in the car's glove compartment, dated March 28, 2013,

---

[4] Photos of the center console admitted into evidence show one or two exposed change receptacles and cup holders, as well as an enclosed compartment with a locking lid that appears also to serve as a center arm rest.  The first photograph of the console admitted into evidence, Commonwealth's Exhibit 7, depicts the lid in a closed position.  Detective Rummel identified Commonwealth's Exhibit 9, a photo of the center console with the locking lid open, as showing the "jumbled and messy" contents of the console.  He confirmed that he found various items "in" or "within" the center console.

[5] Rummel originally testified that the identification and library cards were beneath the jewelry box.  He later said that the bag of jewelry was beneath the jewelry box and "then next to that" were the appellant's identification and library cards.  Upon further questioning, he explained that he noted in his report that the cards were under "another baggy of marijuana that was located in the vehicle" and that he did not "have any indication of where [the cards were] in relation to the bag of jewelry."

was located in the Hampton Creek Apartments. No evidence established where the Hampton Creek Apartments were in relation to the location from which the Crown Victoria was towed.

During the appellant's motions to strike, counsel argued that the Commonwealth failed to prove that he had ever possessed the stolen items that were found in the Crown Victoria. As a result, counsel maintained that the Commonwealth had not made the necessary showing of recent possession of stolen property to support an inference that the appellant committed the burglaries and larcenies.

The trial court denied both motions and found the appellant guilty of the charged offenses. In doing so, it noted that the stolen property found in the vehicle that the appellant had been seen driving was "mixed up together" with the appellant's identifying documents. It concluded that this fact disproved the appellant's theory that "somebody else did it."

After trial, the appellant filed a motion to set aside the verdicts, again asserting that the Commonwealth did not establish that the appellant was in exclusive possession of the stolen property. He also argued that absent the inference, no other evidence linked him to the crimes. At a hearing on the motion, the trial court noted that a police witness had seen the appellant in the vicinity of the burglary committed at the Winsley residence on June 3 and that Melissa Cooke had seen him driving the car in which the stolen property had been found. The court took the matter under advisement and later denied the appellant's motion to set aside the verdict.

The appellant was sentenced to ten years in prison for each of the four offenses, with thirty-four of the forty years suspended.

## II. ANALYSIS

The appellant contends that the evidence was insufficient to support his convictions for burglary and grand larceny because it did not establish that he was the person who committed the crimes. He suggests that the Commonwealth did not prove that he had exclusive possession of

recently stolen property, as required to permit application of the inference that he was the perpetrator. The Commonwealth counters that even without the larceny and burglary inferences, the circumstantial evidence was sufficient to prove that the appellant committed the offenses.

When the sufficiency of the evidence is challenged on appeal, the Court reviews the evidence in the light most favorable to the prevailing party at trial, in this case the Commonwealth. E.g., Grimes v. Commonwealth, 288 Va. 314, 318, 764 S.E.2d 262, 264 (2014). Determining the credibility of the witnesses and the weight afforded their testimony are matters left to the fact finder, who has the ability to see and hear them as they testify. E.g., Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). On appellate review, this Court asks only if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The appellate court will not set aside the trial court's judgment unless, viewed under this standard, the judgment is "plainly wrong or without evidence to support it." Grimes, 288 Va. at 318, 764 S.E.2d at 264 (quoting Code § 8.01-680).

"Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)). The fact finder is responsible for determining "what inferences are to be drawn from proved facts," provided that the inferences reasonably flow from those facts. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976)). In other words, "for inferences to amount to evidence they must be inferences based on facts that are proved, and not inferences based on other inferences." Smith v. Commonwealth, 185 Va. 800, 819, 40 S.E.2d 273, 282 (1946). "An inference loses its rationality . . . when it becomes so

attenuated as to appear to stand alone, deriving none of its probative strength from the proven basic facts." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).

The appellant does not challenge the proof that the burglaries and larcenies occurred. Once the occurrence of a larceny has been established, the "unexplained possession of recently stolen goods permits the fact finder to infer that the possessor is the thief." Archer v. Commonwealth, 26 Va. App. 1, 13, 492 S.E.2d 826, 832 (1997). A variation of the larceny inference also may apply to prove a charge of breaking and entering. Cannady v. Commonwealth, 210 Va. 533, 535, 172 S.E.2d 780, 781 (1970). "[U]pon proof of a breaking and entering" coupled with a simultaneous theft, "the exclusive possession of the stolen goods shortly thereafter . . . has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering." Id. (quoting Sullivan v. Commonwealth, 210 Va. 201, 203, 169 S.E.2d 577, 579 (1969)).

The inference, however, "arises only when the accused has been shown to be in exclusive possession of recently stolen property, regardless of how much other incriminating evidence the Commonwealth has marshalled." Best v. Commonwealth, 222 Va. 387, 389-90, 282 S.E.2d 16, 18 (1981) (*per curiam*). Further, the law makes clear that "one can be in exclusive possession of an item when he jointly possesses it with another." Archer, 26 Va. App. at 13, 492 S.E.2d at 832 (quoting Best, 222 Va. at 389, 282 S.E.2d at 17).

Proof of possession requires "evidence that the defendant exercised dominion and control over the property." Nelson v. Commonwealth, 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991). Dominion and control is sometimes characterized as "the ability to reduce an object to actual possession." Hunter v. Commonwealth, 56 Va. App. 50, 60 n.4, 690 S.E.2d 792, 797 n.4 (2010) (quoting United States v. Jenkins, 90 F.3d 814, 822 (3d Cir. 1996)). This in turn requires a "conscious[ness]" of the item's presence. Archer, 26 Va. App. at 13, 492 S.E.2d at 832 (quoting Best, 222 Va. at 389, 282 S.E.2d at 17). A defendant "can only be required to account for the

possession of things which he actually and knowingly possessed, as, for example, where they are found upon his person, or in his private apartment, or in a place of which he has kept the key." Castle v. Commonwealth, 196 Va. 222, 227, 83 S.E.2d 360, 363 (1954) (quoting Tyler v. Commonwealth, 120 Va. 868, 871, 91 S.E. 171, 172 (1917)).  Dominion and control is not established when the evidence reveals merely that "the stolen property was found in a place to which several people, including the accused, had access."  Best, 222 Va. at 389, 282 S.E.2d at 17; see Nelson, 12 Va. App. at 270-71, 403 S.E.2d at 386.

Our holding in Burchette v. Commonwealth, 15 Va. App. 432, 425 S.E.2d 81 (1992), is instructive.  Burchette involved a conviction based on the presence of suspected marijuana in plain view in a vehicle owned by the defendant and parked in front of his home.  Id. at 434-35, 425 S.E.2d at 83-84.  Police also found in the vehicle a wallet containing the defendant's driver's license, as well as a cellular telephone bill, a receipt for the purchase of a handgun, and the handgun itself.  Id. at 435-36, 425 S.E.2d at 83-84.  The telephone bill and gun receipt were "recently dated" and bore the defendant's name.  Id.

This Court held that the presence of the defendant's recently dated phone bill and receipt, as well as the defendant's wallet, driver's license, and handgun, did not establish that he exercised dominion over the drugs.  Id. at 437, 425 S.E.2d at 85.  The evidence did not prove that the defendant recently "used or occupied the vehicle or that he did so at a time when the drugs were present."  Id.  The evidence also did not "exclude the very real possibility that . . . someone other than [the defendant] used or had access to the vehicle and had left the drugs there unbeknownst to him."  Id. at 438, 425 S.E.2d at 85.  Based in part on that reasoning, the Court concluded that although it was "probable . . . that the drugs found in [the defendant's] parked automobile belonged to him, probability of guilt [was] insufficient" to prove his guilt beyond a reasonable doubt.  Id. at 438, 425 S.E.2d at 86.

In the appellant's case, the evidence, viewed under the proper standard, is similarly insufficient to establish that he had dominion and control over the Crown Victoria or the items stolen on June 3 and June 17, 2013, that were found inside it. Melissa Cooke had seen the appellant drive the car on a daily basis for several months during which he resided in the apartment complex she managed, but she was unable to pinpoint the time period during which she saw him driving the car. The electric bill addressed to the appellant that bore the date of March 28, 2013, supports the inference that the appellant was in the vehicle after receiving the bill and may have exercised dominion and control over it at some point during that time. See id. at 438, 425 S.E.2d at 85. However, a period of over two months elapsed between the date of the electric bill and the date on which the stolen items were found in the car. The appellant was seen driving a vehicle pulling away from the curb near the scene of the first burglary on June 3, but no evidence indicates what car he was driving at the time. Additionally, the only evidence in the record is that the car was registered to someone else, to whom the appellant was not shown to have any connection. That person, rather than the appellant, could have had exclusive possession of and access to the car during the relevant period of time. When the appellant was arrested following the attempted burglary on June 17, he was not arrested in or near the Crown Victoria, and he was not shown to have any connection to the location from which the car was towed.[6] He did not have the keys to it in his possession, and no

---

[6] The appellant's attorney made this assertion below, and the prosecutor did not contest it. On appeal, the Commonwealth argues that the trial court was entitled to infer that these locations were in proximity to one another because the appellant was arrested on East Little Back River Road and the car was towed from a parking lot "across from" Little Back River Road. However, other than the similarity in the street names, no evidence in the record supports a finding that the witnesses referenced the same street or, even if they did, that the locations were in proximity to one another. Additionally, in order for a trial court to take judicial notice of "geographical facts," its statements "*must demonstrate clearly* that [it took] judicial notice of the fact before a party may rely upon such notice on appeal." Williams v. Commonwealth, 289 Va. 326, 333-34, 771 S.E.2d 675, 679 (2015) (quoting Edmonds v. Commonwealth, 43 Va. App. 197, 201, 597 S.E.2d 210, 212 (2004)). The trial court made no such statements here.

- 9 -

evidence indicates when he had last driven the car prior to his arrest. See id. at 437-38, 425 S.E.2d at 85.

The evidence likewise does not prove beyond a reasonable doubt that the appellant exercised dominion and control over the stolen items found in the center console of the Crown Victoria. Although a Virginia state identification card and a library card bearing the appellant's name were found in the center console of the Crown Victoria—mixed in with the stolen articles, a cell phone, and other items—no evidence establishes when the cards were placed there in relation to the stolen articles. In addition, the evidence does not establish precisely where the cards were located in relation to the stolen articles before the tow truck driver inventoried some of the console's contents. Further, no DNA, fingerprint or other evidence links the appellant specifically to any of the stolen items. Finally, at the time the Crown Victoria was found, the keys were inside the car, and all of its windows were down. No evidence establishes how long the vehicle was at that location or how long it was open and unsecured. Therefore, we conclude, as the Commonwealth concedes on appeal, that the larceny inference does not apply because the evidence does not prove that the appellant had exclusive dominion and control over the stolen property.[7] For the same reasons, the burglary inference also does not apply.

The Commonwealth contends that the circumstantial evidence as a whole, even without benefit of the larceny and burglary inferences, is sufficient to prove that the appellant was the perpetrator of the charged crimes. See Best, 222 Va. at 389-90 & n.*, 282 S.E.2d at 18 & n.*;

_____

[7] At oral argument, counsel for the Commonwealth candidly conceded that the prosecution did not prove that the appellant "had exclusive possession of the property at the time that it was discovered." An appellate court may not accept even formal concessions of law without independently confirming their correctness. See Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (en banc). Nevertheless, such admissions embody the ethical duties expected of a legal advocate for the Commonwealth and are held in high esteem. See, e.g., Stephens v. Commonwealth, 274 Va. 157, 161, 645 S.E.2d 276, 277 (2007) (recognizing the appropriateness of a concession by the Commonwealth); Jones v. Commonwealth, 28 Va. App. 444, 447, 506 S.E.2d 27, 29 (1998) (noting the Attorney General's "candid[] conce[ssion]" on a point of law); see also Va. R. of Prof'l Conduct 3.3 ("Candor Toward The Tribunal").

Nelson, 12 Va. App. at 270-71, 403 S.E.2d at 385-86.  Under settled principles, evidence "is not viewed in isolation.  While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."  Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 32 (2005)).

Circumstantial evidence "is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Breeden v. Commonwealth, 43 Va. App. 169, 177, 596 S.E.2d 563, 567 (2004) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)).  However, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."  Archer, 26 Va. App. at 12, 492 S.E.2d at 832 (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)).  "Whether an alternative hypothesis of innocence is reasonable is a question of fact" that will be reversed on appeal only if plainly wrong.  Id. at 12-13, 492 S.E.2d at 832.  Ultimately, the appellate court must ask whether a reasonable fact finder could have rejected the defense theories and found the defendant guilty beyond a reasonable doubt.  See Hudson, 265 Va. at 513, 578 S.E.2d at 785.

We find the reasoning in Nelson, 12 Va. App. 268, 403 S.E.2d 384, highly relevant to our analysis.  Nelson involved a stolen truck that was found a week after the theft, unoccupied but running, in the parking lot of an abandoned motel.  Id. at 269, 403 S.E.2d at 385.  A vent window was broken, a license plate had been "placed in the rear window," and the truck appeared to have been "stripped."  Id.  The Court noted that fingerprint evidence on the truck's interior rear window proved that the defendant had been inside the stolen truck after its theft, although the

- 11 -

defendant denied being in the truck and could not explain the presence of his fingerprints. Id. at 271, 403 S.E.2d at 386. The evidence and reasonable inferences established that the truck was found in a place that was "easily accessible by the public" but that "there was little time for anyone to have access to the truck between the time it was abandoned and the time it was recovered." Id. at 269, 271, 403 S.E.2d at 385-86. The Court held that this evidence created a suspicion that Nelson was the person who took the truck and abandoned it a week later but that this suspicion did not constitute proof beyond a reasonable doubt. Id. at 271, 403 S.E.2d at 386.

Unlike in Nelson, the Crown Victoria was not one of the items that the appellant was alleged to have stolen. Nevertheless, here, like in Nelson, the evidence and reasonable inferences flowing from it create a suspicion that the appellant was the thief of the stolen items. However, "to sustain a criminal conviction, the Commonwealth is required to prove more than a suspicion of guilt or probability of guilt." McMorris v. Commonwealth, 276 Va. 500, 506, 666 S.E.2d 348, 351 (2008). In the appellant's case, the evidence connects him generally to the vehicle in which the stolen items were found. A witness testified that the appellant drove the car regularly while he resided in a particular apartment complex. However, that witness was unable to say precisely when she had seen him in the car, and the only evidence providing a specific temporal connection between him and the car is an electric bill dated March 28, 2013. This evidence provides the inference that he had placed the bill there at some point between that date and June 17, 2013, the date on which the car was towed. The presence of a Virginia identification card and a library card bearing the appellant's name gives no indication as to when or under what circumstances they were left there. See Burchette, 15 Va. App. at 437-38, 425 S.E.2d at 84-85. The evidence proves that following a partial inventory of the center console by a tow truck driver, the items in the center console were "commingled" or "mixed up." No testimony indicates where the cards were in relation to the stolen items *prior* to the inventory. Additionally, no evidence shows that the

appellant was found in the vicinity of the Crown Victoria on the date of his arrest or that he was still using the car, which was registered to someone else. The presence of the cards and stolen items together in the same console, although suspicious, does not prove that the appellant stole the items, participated in their theft, saw the items, or was aware that they were stolen. The record is devoid of evidence as to who drove the car there and when it arrived. Further, the car was left unlocked with the windows down and the keys inside, providing ample time for someone to have tampered with its contents before it was towed and searched.

Finally, the fact that the appellant was seen driving in the vicinity of the June 3 burglary during the five-hour period of time in which the burglary occurred, as well as walking in the neighborhood of a completed and an attempted burglary on June 17, the day those crimes occurred, although suspicious, does not prove beyond a reasonable doubt that he committed either charged burglary. The witness who saw him on June 3 did not describe the car he was driving at the time and therefore could not link him to the stolen goods found later in the Crown Victoria. Additionally, when the appellant was taken into custody in the area of the completed and attempted burglaries on June 17, it was merely because he matched the general description of someone seen in the area of the attempted burglary. The "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)). The fact that the appellant had a pair of freezer gloves in his possession at the time, behavior that was also suspicious, does not exclude the reasonable hypothesis that he possessed the gloves for a reason unrelated to the crimes. Although the appellant was wearing athletic clothes and told the arresting officer that he used the gloves for working out, the trial court, as the finder of fact, was not required to accept this explanation. See, e.g., Taylor, 256 Va. at 518, 506 S.E.2d at 314. Nevertheless, on

the procedural posture of this case, the court's rejection of the appellant's explanation to the police did not constitute affirmative evidence of guilt.[8]

Accordingly, the evidence, viewed under the proper standard, fails to exclude the reasonable hypotheses of innocence that flow from the evidence.

## III. CONCLUSION

We hold that the evidence is insufficient to permit application of the larceny and burglary inferences of criminal agency to the presence of the stolen items in the Crown Victoria. Additionally, the circumstantial evidence, although highly suspicious, fails to link the appellant to the offenses beyond a reasonable doubt. Consequently, we reverse the appellant's convictions and dismiss the indictments.

Reversed and dismissed.

---

[8] A fact finder is not required to accept a defendant's self-serving statements. See, e.g., Rawls v. Commonwealth, 272 Va. 334, 350, 634 S.E.2d 697, 705 (2006) (rejecting the defendant's statement to police). Additionally, where the fact finder rejects a defendant's *testimony* based on its firsthand assessment of the defendant's credibility, the fact finder may "treat such prevarications as 'affirmative evidence of guilt.'" Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008) (quoting Wright v. West, 505 U.S. 277, 296 (1992)). This second principle "naturally follows from the broader observation that 'whenever a witness testifies, his or her credibility becomes an issue.'" Id. at 25-26, 660 S.E.2d at 690-91 (quoting Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002)). Consequently, if the fact finder does not have the opportunity to assess the defendant's statements through his live testimony, its rejection of the contents of his out-of-court statements prevents those statements from having any legal effect in his favor but does not, standing alone, provide affirmative evidence of guilt. See United States v. Zafiro, 945 F.2d 881, 888 (7th Cir. 1991), aff'd on other grounds, 506 U.S. 534 (1993), cited with approval in Wright, 505 U.S. at 296. Here, the appellant did not testify.