Present: All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 980378   OPINION BY JUSTICE BARBARA MILANO KEENAN
                              November 6, 1998
MICHAEL W. TAYLOR

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in reversing the defendant's conviction of grand larceny on the ground that the evidence was insufficient to prove his criminal intent.

Michael W. Taylor was indicted for grand larceny in violation of Code § 18.2-95.  He was accused of stealing eleven dies used in the manufacture of trunk locks from Long Manufacturing Company ("Long"), a business located in the City of Petersburg.  Taylor was convicted in a bench trial in the Circuit Court of the City of Petersburg and was sentenced to three years' imprisonment, with execution of all three years suspended.

Taylor appealed his conviction to the Court of Appeals, which reversed the trial court's judgment in an unpublished opinion.  Taylor v. Commonwealth, Record No. 2474-96-2 (December 16, 1997).  The Commonwealth appeals the judgment of the Court of Appeals under Code § 19.2-317(C).

We will state the evidence in the light most favorable to the Commonwealth, the prevailing party at trial.  Horton v.

Commonwealth, 255 Va. 606, 608, 499 S.E.2d 258, 259 (1998); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).  In March 1995, Long held an auction of its property in compliance with the terms of a bank foreclosure action.  Since the electric power had been turned off in all the buildings, the items for auction were illuminated by lighting powered by an electric generator or by the auctioneer's flashlight.  The purchasers at the auction were allowed thirty days to remove their items from Long's premises.

Taylor, a self-employed scrap metal dealer, attended the auction and purchased approximately $900 worth of items, including several presses and dies.  The dies he purchased were located in the "main building" on metal racks containing three or four shelves.  Taylor returned on the first or second day after the auction and removed most of his property, but waited until the thirtieth day to retrieve his remaining items.

Before the auction, Long had sold to Sudhaus of America, a New Jersey business, eleven dies used to manufacture trunk locks ("the Sudhaus dies").  The purchase price was $9,000 plus an additional $29,000 for the patent rights to the dies.  These dies were stored on wooden pallets on the floor of Long's shipping and receiving building.  Deborah Loftis, Long's president, placed yellow tags bearing the name and address of Sudhaus on at least half of the eleven dies prior to the

2

auction.  The tags measured about two by four inches, and the dies were two to three feet long.

The Sudhaus dies were the only items remaining in the shipping and receiving building on the thirtieth day following the auction.  The building doors were open that day on both sides, providing sufficient natural light to illuminate the interior space.  Loftis saw the yellow tags on the dies that morning.

Loftis was present when Taylor arrived that day, but soon left the premises for several hours.  When Loftis returned later in the day, she noticed that the Sudhaus dies were missing. Loftis located some of the Sudhaus dies at Peck Recycling, a business in the City of Richmond.  The dies were untagged, but Loftis was able to identify them by pulling apart and examining each die.

The day after the Sudhaus dies were taken, Loftis spoke to Taylor by telephone and made notes of their conversation.  When Loftis asked about the missing dies, Taylor responded: "Well, what am I going to do about my press that wasn't there [sic] I came to pick up?"  Loftis then asked Taylor, "Did you take [the Sudhaus dies]?"  Taylor responded, "Well, yeah, but what am I going to do about my stuff that wasn't there?"

After his arrest a few days later, Taylor admitted to Detective Raymond Richardson of the City of Petersburg Police

3

Department that he took the Sudhaus dies and sold them for scrap metal to Peck Recycling.  Taylor stated, however, that he mistakenly thought that the dies belonged to him.  Taylor also told Detective Richardson that the Sudhaus dies were located in the same building where most of his other purchases were located.

Taylor testified at trial that, on the day of the auction, the dies he purchased were illuminated only by a flashlight and were later removed from their marked metal racks and placed on the floor with no identifying lot marks.  He stated that he saw no tags on any of the Sudhaus dies when he returned to remove the last of his purchases and mistakenly thought that those dies were the same dies he had purchased because he saw no other dies on the premises.  Taylor admitted that he previously had been convicted of two misdemeanors involving moral turpitude.

Taylor argues that the evidence was insufficient to support his conviction.  He contends that the evidence supported his claim of mistake, and that the Court of Appeals properly held that the trier of fact would have had to speculate from the evidence in order to conclude that Taylor took the tagged Sudhaus dies.  We disagree with Taylor's argument.

When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must accord the judgment of the trial court sitting without a jury the same weight as a jury

4

verdict.  Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42, cert. denied, 502 U.S. 944 (1991); Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975).  It is the appellate court's duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidentiary support.  Code § 8.01-680; Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998); Walton, 255 Va. at 427, 497 S.E.2d at 871; Tyler v. Commonwealth, 254 Va. 162, 165-66, 487 S.E.2d 221, 223 (1997).  In making this determination, the appellate court must examine the evidence in the light most favorable to the Commonwealth.  Jenkins, 255 Va. at 521, 499 S.E.2d at 265; Walton, 255 Va. at 425-26, 497 S.E.2d at 871.

If there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.  Jenkins, 255 Va. at 520, 499 S.E.2d at 265; Tyler, 254 Va. at 165-66, 487 S.E.2d at 223; Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).  The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from

5

proven facts.  Walton, 255 Va. at 426, 497 S.E.2d at 871;

Saunders, 242 Va. at 113, 406 S.E.2d at 42.

Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive the owner thereof.  Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994); Winston v. Commonwealth, 26 Va. App. 746, 756, 497 S.E.2d 141, 147 (1998).  Under Code § 18.2-95, grand larceny includes the taking, not from the person of another, of goods having a value of $200 or more.

Here, Taylor admitted to Loftis and Detective Richardson that he took the Sudhaus dies from Long's premises.  There is no dispute that the dies were worth more than $200.  Thus, we must determine whether the evidence supports the trial court's finding that Taylor wrongfully took the dies with the necessary criminal intent.

There can be no larceny if the accused, in good faith, believes that the property taken belongs to him, since the essential element of criminal intent is lacking in that circumstance.  Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 31-32 (1964); Butts v. Commonwealth, 145 Va. 800, 811-12, 133 S.E. 764, 767-68 (1926).  Intent is the purpose formed in a person's mind at the time an act is committed.  See Guill v. Commonwealth, 255 Va. 134, 140, 495 S.E.2d 489, 492

6

(1998); Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions and statements of the accused. Id.; Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974).

We hold that there was sufficient evidence to support the trial court's conclusion that Taylor wrongfully removed the Sudhaus dies from Long's premises with the intent to permanently deprive the owner of that property. When Loftis asked Taylor to explain his actions, he did not say that he took the Sudhaus dies by mistake. Instead, he flatly stated that he took the dies and twice asked Loftis about his items that he alleged were missing.

Taylor told Detective Richardson that he found the Sudhaus dies in the same building as his other purchases, which contradicted Loftis' testimony that none of Taylor's items were located in the shipping and receiving building where the Sudhaus dies were stored. Loftis' testimony further contradicted Taylor's version of the events when she stated that Taylor's dies were stored on metal racks, while the Sudhaus dies were located on pallets on the floor and were marked with yellow tags. The trier of fact was entitled to accept the entire testimony of Richardson and Loftis, find Taylor's contradictory testimony unworthy of belief, and conclude that the Sudhaus dies

7

were located in a different building than Taylor's items and were clearly marked when Taylor took them.  Thus, there is sufficient evidence to support the trial court's conclusion that Taylor was untruthful in his testimony, and that he knew when he took the Sudhaus dies that they were not the dies he had purchased.

For these reasons, we will reverse the Court of Appeals' judgment and reinstate Taylor's conviction in accordance with the trial court's judgment order.

<u>Reversed and final judgment.</u>