COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Malveaux
Argued by teleconference

KRISTOPHER QUISHON DAVIS

MEMORANDUM OPINION* BY
v.      Record No. 1010-19-2      JUDGE MARY BENNETT MALVEAUX
MAY 5, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

Travis R. Williams (Todd M. Ritter; Daniels, Williams, Tuck &
Ritter, on brief), for appellant.

Sharon M. Carr, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Kristopher Quishon Davis ("appellant") was convicted by a jury of statutory burglary, in

violation of Code § 18.2-91, and petit larceny, in violation of Code § 18.2-96.[1]  On appeal, he

argues the trial court erred in denying his motion to strike because the evidence was insufficient

to establish his identity as the perpetrator of the offenses.  For the following reasons, we affirm

the trial court.

I.  BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  Stoltz v. Commonwealth, 297 Va. 529, 529 (2019)

(quoting Commonwealth v. Perkins, 295 Va. 323, 323 (2018)).  "This principle requires us to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was indicted for grand larceny, in violation of Code § 18.2-95, but convicted of the lesser-included offense of petit larceny, in violation of Code § 18.2-96.

'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Vay v. Commonwealth, 67 Va. App. 236, 242 (2017) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)).

So viewed, the evidence demonstrates that Daniel Uhler protected his home with sensors and cameras which he could monitor on his smartphone. On April 10, 2018, while Uhler was away from home, he received a notification on his phone that the French doors to his back deck were open. He also received a notification that the motion-activated cameras inside his home had been triggered. Using his phone, Uhler was able to view real-time images from cameras in his home office, bedroom, and living room. Those images showed a person who was wearing a dark-colored ski mask, dark-colored pants, a dark-colored long-sleeved jacket, white shoes, and gloves. As Uhler watched, the person searched through various drawers, boxes, and packages inside the home and placed a number of items inside a backpack. Uhler did not recognize the person who was inside his home and had not given anyone permission to enter or take anything from the house. Uhler called the police.

Officers Kyle Austin and Jared Lawson of the Chesterfield County Police Department arrived at Uhler's home at about 12:45 p.m. Officer Lawson watched the front of the house while Officer Austin went to the rear. At the back of the house, Officer Austin saw a man wearing dark or black clothing leave the residence and walk off the deck. The man was also wearing a mask and gloves and carrying a backpack. Officer Austin could see enough of the man's skin to identify him as black. He also noted that the man was approximately five feet ten or eleven inches tall with a thin build and that he was wearing white Air Jordan Series Eight shoes. Officer Austin testified that he recognized the shoes because he himself owned a pair of them in a different color.

Officer Austin identified himself as police and told the man to put his hands up. The man fell to one knee, dropped the backpack, and started running away.[2] Officer Austin did not pursue the man because the back door of Uhler's house was open and he was unsure whether anyone else was still inside.

At the front of the house, Officer Lawson saw the man running away and told him to stop. When the man continued to run the officer chased him into a wooded area. As he did so, he radioed to police dispatchers that the "[s]uspect ran to the end of [the street], all black with black hat running towards the end of [the street]." Officer Lawson testified that he did not see the man's face because the man was running away from him. He also said he recalled that the man was of average height and that his clothes were "average" in fit. Officer Lawson further testified that the man was wearing long sleeves and something covering his head. After pursuing the man for about thirty seconds, Officer Lawson lost sight of him when he rounded the corner of a shed. Officer Lawson stopped his pursuit in case the man was waiting behind the shed to ambush him.

Nearby, Detective Matthew Cippone of the Chesterfield County Police Department was driving an unmarked vehicle when he heard that a burglary was in progress at Uhler's home. The detective drove into Uhler's neighborhood and began "creeping down [the] street . . . to kind of . . . blend in." Although Detective Cippone was aware that other police units were in the area, he did not see any around him. At that time, he was wearing a "raid vest" which displayed a badge and was labelled "[p]olice" on its front and back. Detective Cippone saw "a black male wearing a . . . dark-colored t-shirt and dark-colored pants and white tennis shoes run . . . at a full

---

[2] Uhler testified at trial that the backpack was his property, that it was taken from his bedroom, and that its contents, including a class ring and other jewelry, were also his property. Appellant did not contest at trial that a break-in had occurred or that items were stolen from Uhler's home.

dead sprint" across the street and behind someone's home. The detective drove to where he had seen the man disappear, left his vehicle, and pursued the man.

As Detective Cippone rounded the corner of the home, he saw a man whom he identified in court as appellant "squatted down" in a "hunched position" behind a garbage can. As soon as appellant saw the detective, he "immediately stood up and just took off running again." The detective identified himself as police and ordered appellant to get on the ground, but appellant ran to the rear of another home where he fell. Detective Cippone arrested appellant, whom he described as sweating and exhausted. The Commonwealth introduced into evidence several photographs of appellant that were taken at the time of his arrest. Those photographs depict appellant wearing a dark-colored t-shirt, white shoes, and jeans. In at least one of the photographs, the jeans appear to be made of dark blue denim.

Officer Austin testified that approximately twenty minutes after he arrived at Uhler's home he learned that a suspect had been taken into custody about three tenths of a mile away. The officer went to the arrest site, and at trial he identified appellant as the man who had been arrested that day. Officer Austin also testified that he recognized appellant as the person whom he had encountered behind Uhler's home. In particular, the officer noted that appellant "had on the same shoes" at the time of his arrest. When the Commonwealth's attorney showed Officer Austin one of the photographs of appellant which were taken upon his arrest, the officer agreed that the shoes depicted on appellant's feet were "the ones that [he] saw on the person that fled the house."

Officer Lawson also encountered appellant after he was arrested. He testified that appellant was of a "[s]imilar build" and "roughly similar height, similar weight" as the man whom he had pursued outside Uhler's home.

- 4 -

Officer Austin also stated that police did not recover a mask or black pants from appellant or from the area. He further testified that appellant did not live in the vicinity of Uhler's home.

In addition to hearing the testimony of Uhler and the three officers and viewing the arrest photographs of appellant, the jury viewed Uhler's security camera footage. The Commonwealth also introduced into evidence still photographs excerpted from the footage, one of which depicted the intruder at full length, including his shoes.

After the Commonwealth presented its case-in-chief, appellant moved to strike the evidence. He argued the Commonwealth had not met its burden to show that he was the perpetrator of the charged offenses. The trial court denied the motion.

Appellant presented no evidence.

The jury convicted appellant of statutory burglary, in violation of Code § 18.2-91, and petit larceny, in violation of Code § 18.2-96. This appeal followed.

## II. ANALYSIS

Appellant argues the trial court erred in denying his motion to strike because the evidence was insufficient to prove his identity as the perpetrator of the burglary and larceny. Specifically, he contends the identity evidence was insufficient because neither Uhler, nor Officer Austin, nor Officer Lawson testified that they saw the perpetrator's face. Instead, only Officer Austin claimed to be able to identify the perpetrator as appellant, but this identification was made simply on the basis of Austin's observation that appellant and the man behind Uhler's home "had on the same shoes." Further, appellant contends the clothing he was wearing when apprehended did not match the clothing Officers Austin and Lawson described the perpetrator as wearing.

"In the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact

finder.'" Vay, 67 Va. App. at 249 (alterations in original) (quoting Hawkins v. Commonwealth, 64 Va. App. 650, 657 (2015)). Accordingly, "[a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury." Lawlor v. Commonwealth, 285 Va. 187, 223 (2013). "What the elements of the offense are is a question of law that we review *de novo*. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Vay, 67 Va. App. at 249 (quoting Linnon v. Commonwealth, 287 Va. 92, 98 (2014)). "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom." Lawlor, 285 Va. at 224. "After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Vay, 67 Va. App. at 249 (quoting Linnon, 287 Va. at 98). "In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." Lawlor, 285 Va. at 224 (quoting Commonwealth v. McNeal, 282 Va. 16, 20 (2011)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." Cuffee v. Commonwealth, 61 Va. App. 353, 364 (2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423 (2003)). As with any element of an offense, identity may be proved by direct evidence or by circumstantial evidence. Crawley v. Commonwealth, 29 Va. App. 372, 375 (1999). Circumstantial evidence "is as competent and is entitled to as much weight as direct evidence." Williams v. Commonwealth, 71 Va. App. 462, 484 (2020) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 177 (2004)). This is so because "the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting

Commonwealth v. Hudson, 265 Va. 505, 512-13 (2003)). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." Williams, 71 Va. App. at 484-85 (alterations in original) (quoting Moseley, 293 Va. at 463). We are further mindful that "[t]he fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." McNeal, 282 Va. at 22 (quoting Commonwealth v. Taylor, 256 Va. 514, 518 (1998)).

Here, the trial court correctly concluded that the Commonwealth had adduced sufficient evidence, if believed by the jury, to prove that appellant was the person who perpetrated the burglary and larceny.

The jury viewed Uhler's security camera footage and still photographs excerpted from that footage, both of which allowed the jury to observe that the perpetrator was wearing a dark-colored ski mask, dark-colored pants, a dark-colored long-sleeved jacket, white shoes, and gloves. From the footage and photographs, the jury was also able to observe the perpetrator's height and build. The jury then heard Officer Austin's description of the person he saw leaving Uhler's home with a backpack. He described that person as a black male with a thin build who was approximately five feet ten or eleven inches tall and who was wearing dark or black clothing, gloves, and a mask. Officer Austin also noted that the person was wearing a distinctive style of shoe that was personally known to Austin: Series Eight Air Jordans, which were white. The jury heard that the man encountered by Officer Austin fled from him when he identified himself as police.

The jury was also presented with Officer Lawson's testimony that he saw the fleeing suspect and pursued him. Officer Lawson told the jury that the suspect was of average height

and that he wore long sleeves and something covering his head. Officer Lawson stated that he told dispatchers the suspect was wearing "all black with [a] black hat." Although the jury heard that the suspect had eluded Officer Lawson, it also heard from Detective Cippone that while he was driving through Uhler's neighborhood he saw a black male wearing a dark-colored t-shirt, dark-colored pants, and white tennis shoes. That man ran across the road in front of the detective's unmarked vehicle and disappeared behind a home. When Detective Cippone pursued him, he found the man, whom he identified in court as appellant, hunched down behind a garbage can. The jury heard that appellant fled when he saw the detective, who was wearing a police vest, and continued to run through residential yards after Detective Cippone verbally identified himself as police and told appellant to get on the ground.

Further, the jury heard Officer Lawson describe his encounter with appellant after the arrest and his testimony that appellant was of similar build, height, and weight as the man whom he had chased outside Uhler's home. The jury also heard Officer Austin's testimony that the man he saw under arrest was appellant and that he recognized him as the same person whom he had encountered behind Uhler's house. Officer Austin made clear that the shoes appellant was wearing when arrested were the same as the ones he had seen on the person who fled from Uhler's home. Officer Austin further told the jury that the arrest occurred approximately twenty minutes after police arrived at Uhler's home and about one third of a mile from the home, and he noted that appellant did not live in the area. Lastly, the jury viewed photographs of appellant taken at the time of his arrest, including photographs that depicted appellant's footwear and dark clothing.

The jury had the opportunity to observe appellant's race, height, and build at trial. As fact-finder, it was within their province to determine the credibility and weight to give the officers' descriptions of the suspected perpetrator, and to compare those descriptions with their

observations of appellant and the man they saw in the security footage and photographs. It was also within the jury's province to determine the credibility and weight to give Officer Austin's identification of appellant as the person who emerged from Uhler's home, and to compare the clothing and distinctive shoes Austin described with the clothing and shoes visible in the security camera images and post-arrest photographs. The jury could also reasonably infer guilt from appellant's flight from the officers and Detective Cippone, and that between appellant's flight from the officers and his arrest he had abandoned his gloves, mask, and other items of clothing. See Claggett v. Commonwealth, 252 Va. 79, 93-94 (1996) ("Flight following the commission of a crime is evidence of guilt," and "includes the taking of any action . . . intended to disguise one's identity and distance oneself from the crime"). Also, the evidence indicated that although appellant did not live in Uhler's area, he was apprehended a short distance from Uhler's home and soon after the break-in. The evidence also evinced that appellant ran through residential properties and attempted to conceal himself from detection behind a trash can.

Taken in its totality, this evidence was sufficient for the jury to conclude that appellant was the same person whom they viewed in the camera footage and photographs from Uhler's home, whom Officer Austin saw emerge and flee from the residence, whom Officer Lawson pursued from the home, and whom Detective Cippone arrested. Because the evidence, if credited by the jury, was sufficient to establish appellant's identity as the perpetrator of the burglary and larceny, we conclude the trial court was not plainly wrong in denying appellant's motion to strike the evidence.

### III. CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in denying appellant's motion to strike the evidence. Accordingly, we affirm.

Affirmed.