COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, Ortiz and Raphael
Argued at Richmond, Virginia


MATTHEW P. SERRI, S/K/A
 MATTHEW PAUL SERRI

                                                         MEMORANDUM OPINION* BY
v.        Record No. 0630-21-2                        JUDGE DANIEL E. ORTIZ
                                                              JUNE 7, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GREENE COUNTY
Claude V. Worrell, Jr., Judge

Christopher C. Graham (Eustis & Graham, PC, on brief), for
appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring, [1]
Attorney General; Robert H. Anderson, III, Senior Assistant
Attorney General, on brief), for appellee.


Following a jury trial in the Circuit Court of Greene County, Matthew Paul Serri was

convicted of malicious wounding, in violation of Code § 18.2-51, and burglary, in violation of Code

§ 18.2-89. Serri asserts that the evidence was insufficient to find him guilty of the offenses.

Because the Commonwealth presented sufficient evidence through eyewitness testimony for the

jury to find beyond a reasonable doubt that Serri committed the offenses, we affirm.

BACKGROUND

Mark Hinton was at home alone on the evening of August 8, 2018. Shortly after an

8:00 p.m. phone call with his niece, Hinton laid down on his living room couch. He then heard a

"real loud boom" echo through his house. A female he knew as Rikki entered the house. Hinton's

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

front door had been closed and locked; the evidence ultimately revealed that the door had been kicked in. Hinton was about to tell Rikki that she did not have to kick his door in, when "all of the sudden" Serri appeared and attacked him. Serri accused Hinton of "snitch[ing] on him" and told Hinton to "catch [his] last breath." Serri struck Hinton on the head three times with an ash tray. Hinton raised his hands to block the blows, but Serri hit him several more times with such force that the ash tray stuck to the back of Hinton's head. Serri then "stomped" on Hinton's left leg and bit Hinton's face, while also pushing Hinton's face away with his hands. Hinton looked into Serri's eyes as Serri bit him and described Serri as "a dog trying to tear a piece of meat off." Serri flipped Hinton over and put him in a choke hold, while biting him on the back of his neck.

Hinton could not breathe and was weak from losing blood. He prayed out loud, "Lord help me." Serri responded, "you better call on him cause you're going to see him tonight." Hinton felt that he had "had enough" and "was done." Suddenly, Serri relaxed his grip and said, "tell me where the drugs are and I'll let you live." Hinton had no drugs, but he said, "all right," stood up, and started to walk toward the hallway as if he were going to retrieve some. When he got close to the wide-open front door, Hinton fled the house. After a brief scuffle with Serri outside, Hinton managed to get away and ran to a neighbor's house to call the police.

After the attack, Serri was seen at a local Walmart by a loss prevention associate who stood next to Serri at a register. The loss prevention associate noticed that Serri had blood on his face, around his neck, and on his hands. Serri also had a visible cut in one of his eyebrows.

Greene County Sheriff's Sergeant Reade Marchette was sent to Hinton's house, and when he arrived, he noticed that the front door was kicked in. Marchette thought he was there to investigate a burglary, but when he entered the house, he knew it was "something more serious" because he saw a lot of blood. When he went back outside, Marchette met Hinton in the driveway. Hinton was covered in blood, and he had "multiple obvious traumas" to his head, face, and

shoulders, including a large bite mark on his left cheek. Hinton told Marchette that he was attacked by a male and female who thought he had "snitched" on them. Hinton would not tell Marchette their names.

Hinton sustained numerous injuries from Serri's attack. He had multiple lacerations on his face, scalp, forehead, and eyelid. Both his eyes were bruised. He also had blood in his mouth and throat and multiple bite marks and lacerations on his skin. Additionally, Hinton had broken fingers on both hands requiring treatment by an orthopedic surgeon. Lab results showed that Hinton had anti-anxiety medication in his system, but he tested negative for all other drugs and a negligible amount of alcohol. Hinton had to be sedated. When he awoke in the intensive care unit (ICU) days after the attack, he discovered that he could not walk and attended rehabilitation "to learn how to walk again."

Greene County Sheriff's Investigator Scott Murphy investigated the case. When he interviewed Hinton at the hospital, Hinton identified both Rikki and Serri as his assailants, but he could not remember Serri's name, only that he was Rikki's boyfriend. Murphy also was familiar with Serri and knew he was Rikki's boyfriend. Murphy later showed Hinton a photograph of Serri, and Hinton verified that Serri was his attacker. Hinton told Murphy that Rikki struck him with the small wooden leg from a table, which was found in his house after the attack.

At trial, Hinton testified that he had known Rikki for "a couple of years," and Rikki had introduced him to Serri. Hinton did not know Serri well enough to know his last name, but he knew Serri was Rikki's boyfriend, and he had used drugs with them at his house a few times. Hinton also identified Serri at trial. Hinton denied that he had ever "snitched" on Serri. Although he did not testify on direct that Rikki struck him during the attack, he responded to Serri's inquiry on cross that he believed she had.

At trial, Serri admitted he was at Hinton's house with Rikki on the night of the offense, but he denied going into the house and attacking Hinton. He claimed Hinton's door was already open when they arrived. Serri testified that Rikki entered Hinton's house alone and was inside for two or three minutes. Serri conceded that Rikki would have been unable to kick down the door herself because she was wearing an orthopedic boot on her leg from recent surgery. Although Rikki was only five feet tall and weighed about 108 pounds, Serri believed she could overpower Hinton and suggested that Rikki was Hinton's attacker.

The jury found Serri guilty of malicious wounding and burglary. Serri appealed.

ANALYSIS

Serri alleges that the evidence was insufficient to prove he committed the offenses for two reasons: first, he argues that the only proof linking him to the offenses came from Hinton's "unreliable" testimony, and second, he asserts that the verdicts were not supported by corroborating physical or scientific evidence.

The principles governing our review of the sufficiency of the evidence are well-settled. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion

- 4 -

might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

We will not disturb the jury's findings on the credibility of the witnesses unless those findings are plainly wrong. *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011). Witness credibility determinations "[are] within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). It is solely within the province of the jury to determine not only the credibility of the witnesses, but "the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). Thus, "[w]e must accept the trier of fact's 'determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Glass v. Commonwealth*, 74 Va. App. 214, ___ (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

Serri asserts that Hinton was not credible and argues that the evidence was insufficient as a matter of law to support the convictions because no corroborating forensic evidence linked Serri to the crime scene. Serri contends that Hinton's identification of Serri as his attacker is unreliable because Hinton failed to give Marchette Serri's name immediately after the attack and identified Serri only after Murphy showed him a picture. Serri also asserts that there was no motive for the assault because there was no evidence that Hinton snitched on Serri. Finally, Serri stresses that, while Hinton told Murphy that Rikki hit him with a table leg during the attack, he failed to testify to that at trial. Serri concludes that because of the inconsistencies and the "troubling identification" of Serri as Hinton's attacker, no reasonable juror should have believed Hinton's testimony. We disagree.

We first note that before encountering Marchette, Hinton underwent a beating so brutal that it resulted in his admission to the ICU with severe injuries, including lacerations to his face, forehead, eyelid, and scalp, along with black eyes and broken fingers. He had bite marks, and skin was missing from his face from one of the bites. Hinton had to be sedated in the emergency room and woke up days later in the ICU. He was later treated by an orthopedic surgeon, and he had to learn how to walk again. Moreover, the bloodshed at the scene was so extreme that Marchette believed a murder had occurred and looked for a dead body. Hinton's inability to recall Serri's name, after having met Serri only a few times, hardly renders his identification of Serri unreliable or inherently unworthy of belief. Hinton looked into Serri's eyes while Serri bit his cheek and pushed at his face. Although Hinton did not remember Serri's name, he recognized Serri's face.

That Hinton identified Serri by his photograph also does not undermine the veracity of his testimony. Contrary to Serri's assertion, Hinton was not confused about his attacker. Hinton consistently stated that he was attacked by a female and a male, whom he later identified as Rikki and her boyfriend. Hinton had met Serri on several occasions, and he saw Serri's face during the assault. Also, other than anti-anxiety medication, Hinton did not have any drugs or alcohol in his system that might adversely affect his memory. And Hinton identified Serri in court. In short, we fail to see how Hinton's identification could be inherently incredible.

The fact that Hinton did not actually "snitch" on Serri is of no moment. The record shows a motive for the attack—Serri wanted Hinton's drugs. And Hinton's failure to testify on direct examination that Rikki struck him during the attack does not undermine his testimony's credibility. In fact, on cross-examination, he stated he thought she had struck him. "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. Testimony may be contradictory or

contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Consequently, as Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler*, 59 Va. App. at 292). Even if Hinton's testimony reached the threshold to be considered inconsistent, the jury resolved the inconsistencies by finding Hinton's testimony credible.

Finally, Hinton's testimony is not compromised by the lack of forensic evidence found at the crime scene. In fact, Serri's own statement sufficiently corroborated Hinton's account. Serri admitted he was present at the scene when he testified that he and Rikki drove to Hinton's house on the night of the offense. Only Rikki, Serri, and Hinton were at Hinton's house, leaving no other suspects. Serri acknowledged that Hinton's front door was kicked in, and he conceded that Rikki could not have kicked down the door because she had a boot on and could not walk well. Thus, a fact finder could infer that Serri breached the door to enter the residence. Based on the evidence of Rikki's small stature and limited mobility, it exceeds the bounds of common sense to suggest that she acted alone with sufficient violence, over only two or three minutes, to cause Hinton's significant injuries. Lastly, Serri was seen in Walmart after the attack with blood on his face, neck, and hands and a cut on his eyebrow, suggesting that he was in a recent fight.

Simply put, the record does not support Serri's assertion that Hinton's testimony was so inherently incredible that it requires reversal of Serri's convictions. "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Rather than showing that Hinton's testimony was so

"manifestly false" that no reasonably intelligent person would believe it, the record amply supports the jury's rejection of Serri's claim of innocence.

Because Hinton's testimony was not inherently incredible as a matter of law and because the record supports the convictions, we do not disturb the verdicts on appeal.

CONCLUSION

We hold that the eyewitness testimony was not inherently incredible and thus, the evidence presented was sufficient to support Serri's convictions for malicious wounding and burglary. We, therefore, affirm the trial court.

*Affirmed.*