COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Callins and White

VICTOR BERNARD ORTIZ

                                                    MEMORANDUM OPINION*
v.        Record No. 0644-22-3                        PER CURIAM
                                                      MARCH 28, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AMHERST COUNTY
Michael T. Garrett, Judge

(Craig P. Tiller, on briefs), for appellant.  Appellant submitting on
briefs.

(Jason S. Miyares, Attorney General; Leanna C. Minix, Assistant
Attorney General, on brief), for appellee.


The Amherst County Circuit Court convicted Victor Bernard Ortiz on one count of violating

a protective order and two counts of violating the conditions of his probation.  Ortiz asserts that the

trial court erred in overruling his objection to testimony regarding an incriminating statement he

made to the police, and he also asserts that the evidence was insufficient to support his convictions.

Ortiz further argues that the trial court erred in convicting him of violating his probation because

those convictions were based on an erroneous conviction for violating a protective order that he

contests in this appeal.  After examining the briefs and record, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);

Rule 5A:27(a).  For the following reasons, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

In September 2020, the Amherst County Juvenile and Domestic Relations District Court entered a protective order against Ortiz prohibiting him from having contact of "any kind" with his then-wife, Jennifer Tyree. The protective order granted Tyree exclusive possession of the marital residence and was in full force and effect until September 9, 2022.

During the early morning hours on April 29, 2021, Tyree awoke to find Ortiz standing next to her bed with his hand on her head. He sat down in a chair and stared at her. Ortiz talked about reuniting and told her he was sorry for his previous actions. Tyree got out of bed, found her cell phone, dialed 911, and pushed the send button. She did not put the phone to her ear because she did not want Ortiz to know she had called the police. Ortiz was "just ranting and raving" for at least five to ten minutes over the fact that she disagreed with his request to reunite and, before leaving the house, he told her that he was going to "make [her] pay." After Ortiz left, Tyree spoke with the 911 dispatcher and identified Ortiz and described his vehicle as "a small silver car." Tyree later admitted that she was charged with possession of methamphetamine after this event, but she explained that the charge was withdrawn by the Commonwealth. She also stated that she did not know how Ortiz entered the house because all the doors were locked.

Amherst County Emergency Dispatcher Sarah Bryant received Tyree's 911 call. When she answered the phone, Bryant heard voices in the background, and she could tell "it was a tension situation." Bryant heard a female speaking but could not understand what was said. Bryant also heard a male voice say that he would "be back." After the male left, Bryant spoke to Tyree, who identified the male as Ortiz, gave a description of the car he was driving, and said he was travelling in the Wiggington Road area. Bryant dispatched a deputy to investigate.

Amherst County Sheriff's Deputy Reginald Olivia drove toward Tyree's house and observed a vehicle matching the dispatch description drive past him near Tyree's residence. Deputy Olivia activated his lights and initiated a traffic stop. At trial, Deputy Olivia testified that he asked Ortiz for his identification and inquired why Ortiz was in the area. When Deputy Olivia began to testify as to Ortiz's response, Ortiz objected because he had not been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The prosecutor asked Deputy Olivia if he was actively placing Ortiz under arrest at that time, to which Deputy Olivia responded, "No, I was conducting an investigation at that time." Deputy Olivia later testified that Ortiz was only detained at that time and was not under arrest. The trial court overruled Ortiz's objection. Deputy Olivia then testified that Ortiz responded that he was "coming from the area of Northridge Place" where he and his wife used to live, but "denied being anywhere around his wife" and said that he was only "back there driving around." Deputy Olivia then placed Ortiz under arrest. Since Ortiz had two or more prior convictions for violating a protective order, he was charged with a felony.

Ortiz moved to strike the evidence after the Commonwealth rested its case. Since the Commonwealth failed to admit any certified prior conviction orders, the trial court reduced the felony charge to a misdemeanor. In closing, Ortiz argued that the evidence was insufficient to support a conviction because it was largely based on the testimony of Tyree, who had a prior history of methamphetamine use. The trial court found that Tyree had awoke to find Ortiz in her bedroom

touching her head, that Tyree could see Ortiz's face and conversed with him when he was about eight feet from her, that Tyree rebuffed Ortiz's attempt to reconcile and "he didn't like her answers," and that Ortiz told Tyree "he would make her pay" and then he left. The trial court also found that Tyree was a credible witness and that Bryant's testimony corroborated Tyree's testimony. The trial court concluded that, even without considering the statements Ortiz made to Deputy Olivia, "the evidence is overwhelming and there's no evidence to the contrary." The trial court convicted Ortiz of violating the protective order and sentenced him to twelve months in jail.

After Ortiz was convicted of violating the protective order, the Commonwealth moved forward on two show causes for violating the conditions of his probation, pursuant to Code § 19.2-306. Based on Ortiz's new conviction for violating the protective order, the trial court found Ortiz guilty of violating the terms of his previously suspended sentences. The trial court revoked the prior sentences and resuspended all but five years. This appeal followed.

ANALYSIS

I. *Miranda*

Ortiz first argues that the trial court erred in overruling his objection to Deputy Olivia's testimony regarding the statements Ortiz made to him after Deputy Olivia stopped Ortiz's vehicle. Ortiz asserts that he was in custody for the purposes of *Miranda* when Deputy Olivia stopped him and, therefore, that Deputy Olivia was required to give him *Miranda* warnings before being questioned. We disagree.

"Whether the circumstances of [police questioning] were such as to require *Miranda* warnings is a mixed question of law and fact." *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020) (quoting *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019)). "Appellate courts 'review such questions *de novo* but defer to the fact-finder's findings of historical fact unless they are plainly wrong or without evidence to support them.'" *Id.* (quoting *Spinner*, 297 Va. at 392).

- 4 -

"Where an accused in a criminal case is subjected to custodial police interrogation, he first must be advised of his Fifth Amendment rights as defined in *Miranda* . . . for any statement he makes to be admissible in evidence." *Commonwealth v. Thornton*, 24 Va. App. 478, 488 (1997). "In assessing whether the interrogation was custodial, we inquire 'whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Brooks v. Commonwealth*, 282 Va. 90, 96 (2011) (alteration in original) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). Relevant factors include "whether the police used physical restraints, displayed their weapons, engaged in physical contact, or told the suspect he was free to leave." *Keepers*, 72 Va. App. at 34. "The number of officers present and whether the police 'engaged in other incidents of formal arrest such as booking' are also probative of custodial status." *Id.* (quoting *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019)).

"If there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." *Hayes v. Florida*, 470 U.S. 811, 816 (1985). The very purpose of an investigatory stop, including the stop of a vehicle, is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." *Davis v. Commonwealth*, 35 Va. App. 533, 539 (2001).

In this case, Deputy Olivia was investigating an allegation that Ortiz had unlawfully visited Tyree's house, in violation of a protective order. When Deputy Olivia observed a car matching the description of Ortiz's vehicle in the vicinity of Tyree's house, Deputy Olivia activated his lights and initiated a traffic stop. In furtherance of the investigation, Deputy Olivia asked Ortiz for his name and where he was coming from. At trial, Deputy Olivia testified that he was not actively placing Ortiz under arrest at the time of the stop. Rather, he did not place Ortiz under arrest until after the investigation had been completed. Deputy Olivia was also the only officer present on the scene, and

there is no evidence that he raised his voice, displayed his weapon, used physical restraints, or applied excessive force. He only exercised the degree of restraint necessary to effectuate a brief, investigatory traffic stop.

These facts compel the conclusion that Ortiz was not in custody for purposes of *Miranda* when the statements were made. We find that Deputy Olivia's questions were investigatory and served to confirm or dispel any suspicion of Ortiz's involvement in the alleged crime. Since Ortiz was not in custody for purposes of *Miranda* when Deputy Olivia asked him where he was coming from, we hold that the trial court did not err in overruling Ortiz's objection to the admission of his statements.

## II. Sufficiency of the Evidence

Ortiz next argues that the trial court erred in finding the evidence sufficient to support his conviction for violating the protective order. Ortiz asserts that he never admitted to entering the residence, that there was "no uncontradicted, direct evidence he was there," and that Tyree's "credibility is low" due to her history of methamphetamine use. We disagree and find that the evidence sufficiently proved that Ortiz violated the protective order.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the

conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). We "accept the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

Tyree testified that she awoke in the middle of the night to find Ortiz standing in her bedroom and touching her head. He then sat down about eight feet from her and stared at her. Ortiz talked about wanting to get back together and told her how sorry he was. When Tyree did not respond in the way he wanted, Ortiz became hostile and started "ranting and raving." Tyree got out of bed and secretly called 911 because she did not want Ortiz to know she called the police. Tyree also testified that, before Ortiz left, he said he would make her "pay." Tyree's testimony was found credible by the trial court, which had the sole responsibility to evaluate her credibility. Ortiz asserts that Tyree's testimony lacked credibility due to her past methamphetamine use. But Tyree's testimony was also corroborated by the 911 dispatcher, Bryant, who received the 911 call from Tyree, heard a male voice, and determined that there was a "tension situation." Deputy Olivia's

interaction with Ortiz moments after the offense and a half mile from Tyree's house also helped corroborate Tyree's testimony. We therefore conclude that the evidence sufficiently proved that Ortiz violated the protective order.

### III. Probation Violation

Lastly, Ortiz argues that the evidence was insufficient to support the trial court's ruling that he violated the terms and conditions of his probation. Ortiz asserts that because the trial court erred in convicting him of violating the protective order, the court necessarily erred in finding him guilty of violating the conditions of his previously suspended sentences.

Since we have held in Sections I and II, *supra*, that the trial court did not err in convicting Ortiz of violating the protective order, Ortiz's argument necessarily fails. Since Ortiz violated the terms and conditions of his probation by receiving a new, valid conviction for violating the protective order, the trial court did not err in revoking the suspended sentences and imposing an active period of incarceration. Code § 19.2-306.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*