COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Lorish and White
Argued at Salem, Virginia

UNPUBLISHED

EMERSON ALEXIS DERAS-CASTRO

                                          MEMORANDUM OPINION* BY
v.        Record No. 1941-22-2                 JUDGE LISA M. LORISH
                                                MARCH 5, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

David A. Eustis (Eustis & Graham, PC, on brief), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court partially granted Emerson Alexis Deras-Castro's motion *in limine* to exclude

any reference to gang-related evidence found in Deras-Castro's home during the Commonwealth's

case-in-chief.  The motion did not seek to preclude eyewitnesses from testifying to gang-related

statements made by Deras-Castro before he shot the victims.  Deras-Castro now appeals his

convictions for malicious wounding and one count of using a firearm in the commission of a felony,

assigning error only to the trial court's partial denial of his pretrial motion *in limine*.  We conclude

any error in the pretrial ruling was made harmless by the unchallenged testimony about

Deras-Castros' gang-related statements and because Deras-Castro also testified and opened the door

to rebuttal evidence about his alleged gang affiliations.  Because Deras-Castro does not challenge

the admission of this other evidence on appeal, we affirm the trial court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Javier Bernal Lopez, Marco Anthony Jimenez, Caesar Montecino, and Jose Mejia were drinking beer outside Mejia's apartment. Deras-Castro encountered the men and shot Mejia in the back of his shoulder and Lopez in the hand and spine. At the hospital, Mejia told investigating officers that Deras-Castro displayed gang hand signals before firing. Albemarle police obtained a search warrant for Deras-Castro's home, and found the firearm used in the shooting, ammunition, and items related to the MS-13 gang. Deras-Castro told the police that he shot Lopez and Mejia, though the details changed throughout his retellings. He claimed that the men were disrespecting him and continued to approach after he pointed his firearm and warned them not to come near him. Deras-Castro was charged with two counts of malicious wounding, two counts of using a firearm in the commission of a felony, and one count of possessing a firearm as an undocumented immigrant.[2]

Before trial, Deras-Castro moved the trial court to exclude any evidence "about gangs, gang activity, gang signs or artifacts, or gang membership." At the hearing on his motion, he limited the scope of his motion to testimony from law enforcement, conceding that the witnesses could testify to their recollections and be subject to cross-examination. Specifically, he stated that "[t]he object of [his] motion is not to have gang memorabilia, signs, and flags brought in without a decent foundation that it is this defendant's property."

After taking the motion under advisement to watch an hours-long recorded interview, the trial court found that allowing the Commonwealth "[t]o say this defendant is a member of a[n] MS-13 gang and to allow testimony that explains the MS-13 gang procedures . . . would be

---

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[2] Deras-Castro ultimately was tried on two counts of malicious wounding and one count of using a firearm in the commission of a felony.

inflammatory and its relevancy would be outweighed by its [tendency to cause] passion and prejudice under the facts of this case." Accordingly, the trial court ruled that it would allow "evidence of what is to be referred [to] as gang activity," but would bar any mention of MS-13. Thus, while the Commonwealth could not show the jury a picture of the flag recovered from Deras-Castro's home, it could "state that there was a flag consistent with a gang."

At trial, Lopez recalled that he was facing the apartment building when Deras-Castro approached the group[3] and that Deras-Castro shouted "long live a gang"[4] before shooting Lopez and Mejia. Jimenez corroborated Lopez's testimony recalling that Deras-Castro used a "phrase of aggression" associated with his gang.[5] Officers testified about their investigation and that they found "gang-related" items at Deras-Castro's home, which he shared with other individuals. During the Commonwealth's case-in-chief, no officer explained what those items were, stated or implied any relationship with MS-13, or mentioned gangs in any other way.

After the Commonwealth rested, Deras-Castro testified that he had acted in self-defense. He claimed that the four men threatened to beat and kill him and that they advanced on him while holding the necks of their beer bottles. He claimed that he shot into the ground and stepped backwards before shooting Lopez in the hand. On cross-examination, he testified that he could not remember whether he had mentioned these facts to officers during his interview. Also on cross-examination, Deras-Castro testified that the men "said that their clique was crazy, and [that]

---

[3] Witnesses also testified that a second, unnamed individual was present with Deras-Castro, but indicated he did not engage in any criminal actions.

[4] The exact quote was "long live la Maras Salvatrucha." Out of the presence of the jury, Lopez testified that he understood "Mara Salvatrucha" to apply to multiple gangs. Due to this statement, the trial court directed the interpreter to interpret this phrase for the jury as "long live a gang."

[5] Jimenez testified that Deras-Castro yelled "La Mara Salvatrucha, the Salvatrucha gang," and understood that as "being aggressive from his part and his gang." The trial court directed the interpreter to interpret this as a "phrase which shows aggression by that individual and his gang."

no one stopped them." In response to further questions, Deras-Castro explained that he understood the phrase clique to mean "they were some type of gang members."

At this point, the Commonwealth (outside the presence of the jury), argued that the "defendant has opened the door to bringing testimony about his gang involvement" by "introduc[ing] the idea of cliques, potentially an opposing gang facing him." Thus, the Commonwealth argued that it should be able to "delve into his gang background" now that Deras-Castro had opened the door. The trial court agreed. The Commonwealth then recalled an officer who testified that he saw photographs on Deras-Castro's phone where he was throwing gang signs, specifically signs related to MS-13. The Commonwealth also introduced photographs of the gang-related material found in Deras-Castro's home, including "MS-13 imagery" and drawings.

The trial court instructed the jury on perfect and imperfect self-defense. The jury convicted Deras-Castro of all three charges. Following a sentencing hearing, the trial court sentenced him to 23 years' imprisonment with 16 years suspended. Deras-Castro appeals.

ANALYSIS

The "admissibility of evidence is within the discretion of the trial court," and we will not reject such a decision absent an "abuse of discretion." *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the

first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

Deras-Castro assigns error only to the trial court's partial denial of his motion *in limine*. There, Deras-Castro conceded that witnesses could testify to their recollections and be subject to cross-examination, but asked the court to prevent the Commonwealth from introducing evidence of "gang memorabilia, signs, and flags brought in without a decent foundation that it is this defendant's property." The trial court ruled that the Commonwealth could put on evidence of gang-related material found in Deras-Castro's home—but not mention MS-13.

In the Commonwealth's case-in-chief, one officer testified, without disclosing additional details, that "gang-related materials" were found. Deras-Castro argues this testimony was not relevant, but even if it were, its relevance would have been outweighed by the danger of unfair prejudice. Indeed, this Court has noted that "evidence identifying a defendant as a member of a gang may be prejudicial, since juries may associate such groups with criminal activity and improperly convict on the basis of inferences as to the defendant's character." *Utz v. Commonwealth*, 28 Va. App. 411, 421 (1998) (quoting John E. Theuman, *Admissibility of Evidence of Accused's Membership in Gang*, 39 A.L.R.4th 775 (1985)).

Assuming, without deciding, that the trial court erred in its pretrial evidentiary ruling, any error would be harmless under the circumstances of this case. "An appellate court reviews a decision to admit or exclude evidence where no federal constitutional issue was raised under the standard for non-constitutional harmless error provided in Code § 8.01-678." *Haas v. Commonwealth*, 299 Va. 465, 467 (2021). The statute provides that:

> When it plainly appears from the record and the evidence given at
> the trial that the parties have had a fair trial on the merits and
> substantial justice has been reached, no judgment shall be arrested

> or reversed . . . [f]or any . . . defect, imperfection, or omission in
> the record, or for any other error committed on the trial.

Code § 8.01-678.

Only the officer's testimony during the Commonwealth's case-in-chief that "gang-related materials" were found in Deras-Castro's home was admitted over Deras-Castro's pretrial objection in his motion *in limine*. Any prejudice resulting from the earlier testimony that Deras-Castro had "gang-related" materials in his home was rendered harmless by the admission of other evidence of his gang affiliation introduced at trial—evidence that Deras-Castro does not challenge on appeal.

The jury heard evidence of Deras-Castro's gang association through both Lopez and Jimenez who separately testified about statements Deras-Castro made just before shooting the victims. Deras-Castro did not object to that testimony; indeed, he affirmatively stated that he "had no objection, and does not complain [in his appellate brief], to the testimony of the two eyewitnesses." What is more, Deras-Castro then testified and opened the door to the admission of more evidence about his gang affiliation on rebuttal. After Deras-Castro said the victims were part of a gang that he understood to be crazy and that "no one stopped them," in support of his self-defense theory, the Commonwealth asked the trial court for permission to put on additional evidence of Deras-Castro's own gang affiliation. While Deras-Castro objected to that rebuttal evidence being introduced below, he did not assign error to the trial court's admission of the same on appeal. The jury heard testimonial evidence of Deras-Castro's association with MS-13 and saw photographic evidence of items from his home that had MS-13 affiliation.

Ultimately, the jury found Deras-Castro was not credible. The jury, "who ha[d] the opportunity to see and hear the witnesses, ha[d] the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*,

256 Va. 514, 518 (1998)). Lopez and Jimenez provided a materially different version of events from those Deras-Castro described, and the jury had the authority to decide which version to believe.

Other evidence corroborated Lopez and Jimenez's account. The forensic evidence did not support Deras-Castro's contention that he shot the men while they charged at him. The record shows that the victims were shot in the shoulder blade and the spine, not in the front of their body as one would expect for a person charging the shooter. Moreover, Deras-Castro gave multiple versions of events to the police and testified to further new details at trial. From that circumstance, the jury could conclude that Deras-Castro was lying to conceal his guilt. *See Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019).

In the light most favorable to the Commonwealth, the evidence established that Deras-Castro shouted a gang-related statement before opening fire on the men, wounding Lopez and Mejia. Deras-Castro then opened the door to the Commonwealth introducing more detailed evidence about the gang-related materials found in his home in rebuttal. We therefore find that any error in the trial court's ruling permitting law enforcement officers to testify during the Commonwealth's case-in-chief that there were "gang-related materials" in Deras-Castro's room was harmless.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*